Todd M. Friedman (216752)
Adrian R. Bacon (280332)
Meghan E. George (274525)
Law Offices of Todd M. Friedman, P.C.
23586 Calabasas Rd., Suite 105
Calabasas, CA 91302
Phone: 323-306-4234
tfriedman@toddflaw.com
abacon@toddflaw.com
mgeorge@toddflaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

JEREMIAH MANIQUIZ, individually, and on behalf of other members of the general public similarly situated,

Plaintiff,

vs.

RACE TELECOMMUNICATIONS, LLC, and DOES 1-20,

Defendant.

Case No. 5:26-cv-00136-KK-AJR

**FIRST AMENDED CLASS ACTION COMPLAINT FOR STATEWIDE OR NATIONWIDE RELIEF**

(1) Violations of Unfair Competition Law (Cal. Business & Professions Code § 17200 *et seq.*)

(2) Violations of Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*)

(3) Conversion (Common Law)

(4) Violations of Electronic Funds Transfer Act (15 U.S.C. §1693 *et seq.*)

**Jury Trial Demanded**

Plaintiff JEREMIAH MANIQUIZ ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, alleges the following against Defendant RACE TELECOMMUNICATIONS, LLC ("Race"), upon personal knowledge as to himself and his own acts and upon information and belief as to all other matters:

## INTRODUCTION

1. This Class Action Complaint is brought pursuant to the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq. ("EFTA"), the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. ("CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL"), and California common law conversion.

2. Plaintiff, individually and on behalf of all others similarly situated, seeks damages, restitution, injunctive relief, and all other available remedies arising from Defendant's uniform practices of: (a) initiating electronic fund transfers from consumer bank accounts without valid authorization in violation of 15 U.S.C. § 1693e(a) and 12 C.F.R. § 1005.10; (b) continuing to debit consumer accounts after cancellation and revocation of authorization; (c) issuing false or misleading refund confirmations; and (d) wrongfully retaining consumer funds to which Defendant has no lawful entitlement.

3. Plaintiff further alleges that Defendant's conduct violates California's Automatic Renewal Law, Cal. Bus. & Prof. Code § 17600 et seq. ("ARL"), including but not limited to Cal. Bus. & Prof. Code § 17602(a)(1)-(3), by failing to present automatic renewal terms in a clear and conspicuous manner, failing to obtain consumers' affirmative consent prior to charging, failing to provide an acknowledgment containing the required terms and cancellation information, and charging consumers after cancellation without providing a compliant and effective mechanism to stop recurring charges. Violations of the ARL constitute "unlawful" business acts and practices under the UCL, Cal. Bus. & Prof. Code § 17200, and further support liability under the UCL's unfair and fraudulent prongs.

## JURISDICTION AND VENUE

4. Venue and jurisdiction are proper in this judicial district because Defendant

does business in this District and a substantial part of the events and conduct giving rise to Plaintiff's claims occurred here. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action includes claims arising under federal law, including the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq., and has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's related state-law claims, which form part of the same case or controversy. Venue is proper under 28 U.S.C. § 1391(b).

## THE PARTIES

5. Plaintiff is a natural person and consumer who maintained a bank account from which the disputed debits were made. Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1693a(6) and Cal. Civ. Code § 1761(d), and engaged in a transaction intended to result, and which did result, in the purchase of services for personal, family, or household purposes.

6. Defendant is a California-based company providing telecommunications services, including internet services to residential consumers, and at all relevant times acted as a "person" within the meaning of Cal. Civ. Code § 1761(c) and a business entity engaged in commerce within the meaning of Cal. Bus. & Prof. Code § 17200. Defendant was responsible for initiating, processing, and/or causing to be initiated the electronic fund transfers and billing practices alleged herein.

7. The true names and capacities of DOES 1–20 are presently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Plaintiff will seek leave of Court to amend this Complaint to allege their true names and capacities when ascertained.

8. Plaintiff is informed and believes, and thereon alleges, that each Defendant acted as the agent, employee, and/or joint venturer of the others, and that each act or omission was within the scope of such agency or employment.

9. Plaintiff is informed and believes, and thereon alleges, that Defendant controlled, directed, approved, and/or ratified the billing, payment processing, and account management practices that gave rise to the unauthorized debits, continued billing after

cancellation, false refund receipts, and wrongful retention of consumer funds described herein.

10. Plaintiff is further informed and believes, and thereon alleges, that the practices alleged in this Complaint were carried out pursuant to Defendant's business operations and applied in a consistent manner to Plaintiff and other consumers.

11. Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein were performed by, or is attributable to, Defendant and/or its employees, agents, and/or third parties acting on its behalf, each acting as the agent for the other, with legal authority to act on the other's behalf. The acts of any and all of Defendant's employees, agents, and/or third parties acting on its behalf, were in accordance with, and represent, the official policy of Defendant.

12. Plaintiff is informed and believes, and thereon alleges, that said Defendant is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions of each and all its employees, agents, and/or third parties acting on its behalf, in proximately causing the damages herein alleged.

13. At all relevant times, Defendant ratified each and every act or omission complained of herein and accepted the benefits of the wrongful conduct described above.

## FACTUAL ALLEGATIONS

14. Defendant Race Telecommunications, LLC ("Race" or "Defendant") is a telecommunications company based in California that markets and provides internet and related services to residential consumers. Race holds itself out as a reliable provider of high-speed internet and promotes its services as competitively priced and consumer-friendly, including through representations that consumers will be billed only for active service and that charges will cease upon cancellation.

15. Plaintiff subscribed to Race internet service as a household consumer. At all times relevant, he paid for and maintained service directly through Defendant, using a bank account that Defendant was authorized to debit for monthly charges.

16. At all relevant times, Plaintiff's subscription to Race's internet service was a continuous, automatically renewing monthly plan for which Race automatically debited

Plaintiff's designated checking account. Plaintiff never received any clear and conspicuous disclosure of automatic renewal terms, cancellation terms, or recurring billing terms prior to enrollment. Race also did not provide Plaintiff with an acknowledgment email or other written confirmation containing the automatic renewal terms, cancellation policy, or information regarding how to cancel, as required by Bus. and Prof. Code § 17602(a)(2).

17. At all relevant times, Plaintiff's enrollment in Defendant's service required participation in Defendant's automatic billing system, through which Defendant initiated recurring electronic fund transfers for monthly service charges. Defendant obtained and maintained this authorization as a preauthorized electronic fund transfer within the meaning of the Electronic Fund Transfer Act and Regulation E. Defendant did not provide Plaintiff with a written authorization containing the terms of such recurring transfers, nor did it provide a copy of any such authorization, as required by 12 C.F.R. § 1005.10(b).

18. On or about October 15, 2024, Plaintiff canceled his Race internet service. He informed Defendant that he no longer wanted the service due to persistent poor connectivity and customer service problems. At the time of cancellation, Plaintiff's account was current, with no outstanding balance owed to Defendant. Plaintiff thereby revoked any prior authorization for further electronic fund transfers, including any preauthorized recurring transfers previously permitted through Defendant's automatic billing system.

19. At the time of cancellation, and based on Defendant's representations and standard business practices, Plaintiff reasonably understood that (a) his service had been terminated, (b) no further charges would be imposed, and (c) any remaining account activity would be limited solely to administrative closure. Defendant failed to provide a compliant cancellation confirmation or mechanism as required by Cal. Bus. & Prof. Code § 17602(a)(3).

20. Prior to returning the equipment, Plaintiff contacted Defendant's customer service department by telephone to coordinate the return. During that call, a representative of Defendant, acting within the course and scope of his employment, informed Plaintiff that his delayed return due to military assignment would "be fine" and that he "would not be charged." This statement was made in response to Plaintiff's explanation that he had been away on military assignment and could not immediately return the equipment. The representative further

indicated that no penalties or charges would be imposed in connection with the return.

21. These representations were false when made. At the time Defendant assured Plaintiff that he would not be charged, Defendant's billing system operated in a manner that, and in fact did, initiate charges tied to Plaintiff's account following cancellation and return of equipment. Defendant subsequently debited Plaintiff's account twice for the same invoice, directly contradicting the assurances provided during the call.

22. On November 15, 2024, Defendant sent Plaintiff an email confirming cancellation under Ticket No. TKT378869. The email included a prepaid shipping label and instructed Plaintiff to return Defendant's equipment and represented, expressly or by clear implication, that Plaintiff's account would be closed upon return and that no further billing would occur thereafter. This communication was transmitted by Defendant through its automated account management system to Plaintiff's registered email address.

23. Plaintiff complied with Defendant's instructions that same day by packaging and returning the equipment using the provided label. This conduct completed all remaining obligations on Plaintiff's end and eliminated any legitimate basis for further charges.

24. Despite the confirmed cancellation and return process, on November 16, 2024, Defendant initiated an electronic debit of $748.25 from Plaintiff's Chase checking account ending in 5122. This charge was recorded by Defendant as Payment Receipt No. 1214315 and tied to Invoice No. RC1384725. The debit was not authorized, was not for active service, and occurred after Plaintiff had revoked authorization for further transfers.

25. The $748.25 withdrawal immediately overdrew Plaintiff's designated bills-only account, which was maintained specifically for essential recurring obligations. As a direct result, Plaintiff lost access to funds necessary for basic financial obligations and left him with a negative balance.

26. On November 16, 2024, Defendant transmitted a "Refund Receipt, No. 1214524" to Plaintiff via electronic communication, stating that the $748.25 debit "had been reversed" and returned to Plaintiff's account. This communication represented that Defendant had already processed a refund transaction.

27. That representation was false when made. Defendant had not processed, initiated,

or transmitted any refund to Plaintiff's account. Despite representing that the funds had been returned, Defendant retained possession and control of the $748.25 and proceeded to initiate an additional debit the following day.

28. On November 17, 2024, while the first unauthorized charge remained unreversed, Defendant initiated a second electronic debit of $748.25 from Plaintiff's account, recorded as Payment Receipt No. 1214854 and again tied to the same Invoice No. RC1384725. The duplication of charges tied to a single invoice demonstrates that the debits were not isolated or accidental, but instead the result of Defendant's billing and processing practices.

29. Following the second withdrawal, Plaintiff's account balance dropped to approximately negative $728.27. As a direct and foreseeable consequence of Defendant's conduct, multiple automatic payments, including essential household expenses, were rejected for insufficient funds, and Plaintiff incurred overdraft fees and additional financial harm. Plaintiff was also deprived of the use of his funds during the relevant period, impairing his ability to meet financial obligations and causing additional economic harm.

30. Plaintiff immediately attempted to resolve the issue after discovering the unauthorized charge. On November 17 and 18, 2024, Plaintiff placed multiple calls to Defendant's customer service line, as reflected in his call records. Despite repeated attempts, Plaintiff was unable to reach a live representative. Defendant failed to answer or return his calls, leaving Plaintiff without any means to stop the unauthorized debits or to secure the refund he was promised.

31. On November 18, 2024, Defendant sent Plaintiff an "Equipment Return Confirmation" email, acknowledging receipt of Plaintiff's returned modem and informing him that his cancellation ticket had been closed. This correspondence confirmed for Plaintiff that his service had been fully terminated. It also reinforced Plaintiff's reasonable expectation that his account was closed, no further charges would be made, and that any balance would be refunded consistent with Defendant's own written communications.

32. On November 19, 2024, Plaintiff's bank, JPMorgan Chase, processed a reversal crediting back one of the unauthorized debits to his account. This adjustment, however, was made unilaterally by Chase Bank in response to Plaintiff's dispute and was not the result of any

corrective action by Defendant. Defendant never returned Plaintiff's funds directly, nor did it honor the "Refund Receipt" it had previously issued. Defendant's failure to process a refund despite acknowledging cancellation left Plaintiff without a direct resolution and created confusion as to Defendant's intentions and obligations. This partial reversal did not fully restore Plaintiff to his prior financial position, did not address the second unauthorized debit, and did not remedy Defendant's underlying conduct or prevent future harm.

33. Defendant's issuance of a "Refund Receipt" falsely representing that funds had been returned, combined with its failure to actually process the refund, affirmatively misled Plaintiff into believing that the unauthorized debit had been resolved. Plaintiff reasonably relied on Defendant's representation that the funds had been returned and, in light of that representation, had no reason to immediately investigate further or initiate formal dispute procedures beyond attempting to contact Defendant. Defendant compounded this concealment by failing to provide any responsive customer service despite Plaintiff's repeated attempts to reach a representative. As a result of Defendant's affirmative misrepresentations and lack of transparency, Plaintiff did not discover, and could not reasonably have discovered, that Defendant had retained the funds until after the fact. Accordingly, any applicable statute of limitations is tolled under the doctrines of fraudulent concealment and delayed discovery.

34. Defendant did not reverse or return the funds it represented as refunded in the "Refund Receipt," nor did it take any action to correct the second unauthorized debit. At all relevant times, Defendant exercised dominion and control over at least $748.25 of Plaintiff's funds to which it had no lawful claim. At the time of these debits, Plaintiff had an immediate right to possession of the funds, having canceled his service and expressly revoked any authorization for further electronic fund transfers. Conversion requires only "the wrongful exercise of dominion over the property of another," and it is "not necessary that there be a manual taking of the property," but rather an assumption of control inconsistent with the plaintiff's rights. *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 451 (1997). Here, Defendant's initiation of unauthorized debits and continued retention of those funds, despite representing that a refund had been issued, constitutes precisely such wrongful dominion over Plaintiff's property inconsistent with Plaintiff's rights.

35. The specific, identifiable funds at issue include, at minimum, the $748.25 withdrawn on November 17, 2024, as well as the initial $748.25 debit that Defendant expressly represented had been refunded but in fact retained. These funds were not part of a generalized or unsegregated obligation, but instead consisted of fixed, discrete amounts withdrawn from Plaintiff's consumer bank account and directly traceable to specific transactions tied to Invoice No. RC1384725. California law does not require that money be segregated in a trust or escrow account to be subject to conversion. Rather, "while money cannot be the subject of an action for conversion unless a specific sum capable of identification is involved, it is not necessary that each coin or bill be earmarked." *Weiss v. Marcus*, 51 Cal. App. 3d 590, 599 (1975). Where, as here, a plaintiff alleges identifiable, discrete sums tied to specific transactions, that requirement is satisfied.

36. At all relevant times, Plaintiff retained an immediate right to possession of these funds, and Defendant's conduct reflects a knowing and intentional exercise of dominion inconsistent with Plaintiff's rights. A plaintiff need only allege a right to immediate possession at the time of conversion, not formal ownership or a segregated fund. *Farmers*, 53 Cal. App. 4th at 452. Notably, the only reversal of any portion of the funds was initiated by Plaintiff's bank, not Defendant, confirming that Defendant did not voluntarily return the funds it had taken. This is not a case involving a mere obligation to repay money; it involves the unauthorized taking and retention of specifically identifiable funds from Plaintiff's account. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages, including the loss of funds, overdraft fees, rejected payments, and disruption of his financial obligations. Because the funds are capable of precise identification and were wrongfully taken and retained, they constitute a sufficiently identifiable res to support a claim for conversion under California law.

37. Defendant's issuance of a "Refund Receipt" while retaining the underlying funds constitutes a material misrepresentation designed to induce Plaintiff to believe that the issue had been resolved, thereby delaying further action and allowing Defendant to maintain control over the funds. In addition to these financial harms, Plaintiff experienced significant stress, frustration, and emotional distress from the uncertainty of whether further withdrawals would occur, the embarrassment of declined payments, and the time and energy required to dispute the

charges and protect his account.

38. Plaintiff is informed and believes, and thereon alleges, that Defendant has engaged in these practices repeatedly and against numerous consumers, creating a continuing threat of harm to the public unless enjoined by this Court.

39. Plaintiff is informed and believes, and thereon alleges, that Defendant's billing system operates in a manner that permits post-cancellation charges, duplicate invoicing, and the issuance of automated refund confirmations without corresponding payment processing, thereby creating a risk of repeated unauthorized withdrawals affecting consumers.

40. Plaintiff alleges that Defendant's representations and omissions were part of a common scheme to mislead consumers, extract payments after cancellation, and retain funds that rightfully belonged to its customers.

41. Plaintiff would not have provided access to his bank account, or would have revoked such access immediately, had he known that Defendant would continue to initiate debits after cancellation and misrepresent the status of refunds.

42. Had Defendant truthfully represented its billing and refund practices, Plaintiff would have taken immediate steps to protect his account and would never have permitted Defendant to access his bank information after cancellation.

43. Plaintiff gave his money to Defendant because of the representations that charges would cease upon cancellation and that refunds would be timely credited. Defendant benefited from falsely representing its practices. Plaintiff received nothing of benefit in exchange, while Defendant retained and used funds that rightfully belonged to Plaintiff.

44. Independently of Defendant's affirmative misrepresentations, Defendant's conduct constitutes unlawful and unfair practices under the CLRA, including charging Plaintiff after cancellation, initiating electronic fund transfers without authorization, and retaining funds for services not provided. These practices are deceptive and unlawful regardless of any specific misrepresentation and do not depend on proof of fraud.

45. Plaintiff is informed and believes, and thereon alleges, that had he not intervened by disputing the charges with his bank, Defendant would have continued to initiate unauthorized and recurring debits from his account. Plaintiff's account remained enrolled in Defendant's

automatic billing system following cancellation. The unauthorized post-cancellation debits were not isolated transactions, but were executed through the same preauthorized recurring payment mechanism Defendant used for monthly service charges. By initiating those debits after Plaintiff revoked authorization, Defendant continued to utilize a preauthorized electronic fund transfer mechanism without valid authorization, including transfers that would have otherwise recurred on a monthly basis absent Plaintiff's intervention.

46. Relying on Defendant's assurances, Plaintiff believed that his account was closed as of October 15, 2024, and that no further charges would be imposed once his equipment was returned. Defendant's subsequent conduct caused Plaintiff to lose money, incur overdraft fees, and suffer the disruption of his personal finances. Despite canceling his service, Plaintiff remains at risk of future harm from Defendant's billing and payment processing practices. Defendant's system operates through automated, preauthorized electronic fund transfer mechanisms that were not properly terminated upon cancellation and that required third-party intervention to stop. Plaintiff cannot rely on Defendant's representations regarding billing cessation, cancellation, or refunds, and absent judicial intervention, Defendant's practices present a real and immediate threat of continued or repeated unauthorized debits, either to Plaintiff or similarly situated consumers, through the same standardized systems.

47. Plaintiff is informed and believes, and thereon alleges, that although Defendant operates as a telecommunications provider subject to certain oversight by the California Public Utilities Commission ("CPUC"), such regulatory status does not immunize Defendant from liability under California's consumer protection laws for the conduct challenged here. California courts have repeatedly rejected attempts by regulated entities to invoke regulatory schemes as a shield against generally applicable consumer protection statutes. As the California Supreme Court has made clear, "[Courts] have long recognized that the existence of a separate statutory enforcement scheme does not preclude a parallel action under the UCL. (*Rose v. Bank of America, N.A*. (2013) 57 Cal.4th 390, 399, (quoting *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 572–573). Rather, "the UCL is meant to provide remedies *cumulative* to those established by other laws, absent express provision to the contrary. (*Id.*; (Bus. & Prof. Code, § 17205.) Nor does the existence of a regulatory framework or exemption

provision operate as a blanket bar to liability. The California Supreme Court has expressly held that: "To forestall an action under the [UCL], another provision must actually 'bar' the action or clearly permit the conduct." (*Id.* at 398; other citations omitted.) Here, no statute, regulation, or CPUC rule affirmatively authorizes Defendant to debit consumers after cancellation, issue false or misleading refund confirmations, or fail to provide required automatic renewal disclosures. Accordingly, Defendant cannot invoke § 17605 or any regulatory scheme as a safe harbor.

48. Furthermore, courts addressing regulated telecommunications entities have rejected the argument that CPUC regulation or PUC-filed tariffs categorically insulate a utility from liability for unlawful or deceptive conduct. In *Pink Dot, Inc. v. Teleport Communications Group*, the court held that a public utility could not rely on its tariff or regulatory status to avoid liability, explaining that "no California case holds that the terms of a PUC tariff can insulate a public utility from its intentionally tortious conduct." (89 Cal. App. 4th 407, 415–416). The court further clarified that claims may proceed so long as they do not "hinder or frustrate the commission's declared supervisory and regulatory policies." *Id.* at 418.

49. Plaintiff's claims here do not challenge any rate, tariff, or policy determination of the CPUC, but instead arise from Defendant's consumer-facing billing and payment practices, including unauthorized debits, post-cancellation charges, and false refund representations, which are not authorized by, governed by, or in conflict with any CPUC policy. Accordingly, this action does not hinder or frustrate any regulatory objective, but rather seeks to remedy unlawful conduct that falls outside the scope of protected regulatory activity.

50. Moreover, the exemption set forth in Cal. Bus. & Prof. Code § 17605 must be construed narrowly and applies only where the specific conduct at issue is actually regulated or authorized. Defendant's post-cancellation debiting practices, failure to provide compliant automatic renewal disclosures, and issuance of false refund confirmations are not conduct governed, approved, or authorized by the CPUC. Accordingly, § 17605 does not apply to the misconduct alleged herein.

51. In any event, even if Defendant were ultimately found to fall within the scope of § 17605 for purposes of the ARL, Defendant's conduct remains independently unlawful, unfair, and fraudulent under the UCL, Cal. Bus. & Prof. Code § 17200, including as predicated on

violations of the EFTA, CLRA, and common law conversion. As California courts have consistently held, the UCL "borrows" violations of other laws and makes them independently actionable, regardless of whether those laws provide a private right of action. (*Rose*, supra, 57 Cal.4th at 397–398.)

52. Plaintiff will provide Defendant with supplemental notice pursuant to Cal. Civ. Code § 1782, expressly identifying the class-wide nature of Defendant's unlawful practices and affording Defendant an opportunity to cure such violations on behalf of all affected consumers pursuant to Section 1782(c). This supplemental notice is consistent with and expands upon Plaintiff's prior notice, which described the same underlying misconduct. Defendant has failed to cure the violations described therein.

## CLASS ACTION ALLEGATIONS

53. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

54. Plaintiff brings this action, on behalf of himself and all others similarly situated, and thus, seeks class certification under Federal Rule 23.

55. The class Plaintiff seek to represent (the "Nationwide Class") is defined as follows:

> All persons in the United States who, during the applicable statute of limitations period, had their bank accounts or debit cards debited or subjected to attempted debits by Defendant after cancellation of service and/or without valid authorization, including through the use of preauthorized electronic fund transfer mechanisms where such authorization had been revoked or was otherwise no longer valid, through the date of class certification. This definition encompasses consumers whose accounts remained enrolled in Defendant's automatic billing system and were subjected to post-cancellation electronic fund transfers executed through the same standardized payment mechanisms used for recurring charges.

56. In addition, Plaintiff seeks to represent the following California subclass (the "California Automatic Renewal Subclass"):

> All persons in California who, during the applicable statute of limitations period, were enrolled in Defendant's automatically renewing internet service or subscription plan without Defendant providing clear and conspicuous automatic renewal terms, obtaining affirmative consent to those terms, and/or providing a compliant acknowledgment, through the date of class certification.

> This subclass includes consumers who were subsequently charged after cancellation as a result of Defendant's failure to provide a compliant cancellation mechanism or acknowledgment.

57. Plaintiff further seeks to represent the following California subclass (the "California Misrepresentation Subclass"):

> All persons in California who, during the applicable statute of limitations period, were subjected to uniform representations by Defendant that no further charges would be imposed after cancellation and/or that a refund had been issued or processed, and who were subsequently charged by Defendant after cancellation or were not provided the promised refund, through the date of class certification.

58. As used herein, the term "Class Members" shall mean and refer to the members of the Nationwide Class and California Subclasses, collectively.

59. Defendant, their employees and agents are excluded from The Class. Plaintiff does not know the number of members in The Class, but believes the Class members number in the hundreds, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

60. Upon information and belief, Defendant employs standardized, centralized, and automated billing and payment processing systems that are applied uniformly to consumers nationwide, rendering joinder of all Class members impracticable.

61. Plaintiff reserves the right to amend the Class, and to add additional subclasses, if discovery and further investigation reveals such action is warranted.

62. Upon information and belief, the proposed Class consists of thousands of consumers nationwide. The Class is so numerous that the individual joinder of all of its members is impractical. While the exact number and identities of The Class members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that The Class includes hundreds, if not thousands, of members. Plaintiff alleges that The Class members may be ascertained by the records maintained by Defendant.

63. The claims asserted herein do not depend on individualized negotiations or unique interactions, but instead arise from Defendant's standardized practices, uniform billing

systems, and form communications directed to consumers.

64. Rather, all claims in this matter arise from Defendant's uniform and systematic practices of initiating unauthorized debits after cancellation, failing to honor refund representations, and retaining consumer funds without legal entitlement.

65. There are common questions of law and fact common to the Class affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual Class members and include, but are not necessarily limited to, the following:

(a) Whether Defendant initiated recurring electronic fund transfers from Class members' bank accounts after cancellation of service and/or without valid authorization;

(b) Whether Defendant utilized a standardized preauthorized electronic fund transfer system to initiate such debits;

(c) Whether Defendant obtained written authorization, signed or similarly authenticated, from Class members for such recurring electronic fund transfers, as required by 15 U.S.C. § 1693e(a) and 12 C.F.R. § 1005.10(b);

(d) Whether Defendant provided Class members with a copy of the authorization at the time the recurring transfers were authorized, as also required by Regulation E;

(e) Whether the electronic fund transfers initiated by Defendant were "unauthorized electronic fund transfers" within the meaning of the EFTA, including where (i) no valid written authorization existed, (ii) any prior authorization had been revoked, (iii) the transfers occurred after cancellation of the underlying service, or (iv) the transfers exceeded the scope of any authorization provided;

(f) Whether Defendant continued to initiate electronic fund transfers after consumers revoked authorization and/or canceled service;

(g) Whether Defendant made uniform or standardized representations regarding billing, cancellation, and/or refunds;

(h) Whether Defendant issued refund confirmations without actually processing refunds;

(i) Whether Defendant's conduct constitutes violations of the Electronic Funds Transfer Act, the California Consumer Legal Remedies Act, the Unfair Competition Law, and/or conversion;

(j) Whether Defendant violated California's Automatic Renewal Law;

(k) Whether Plaintiff and Class Members are entitled to equitable and/or injunctive relief;

(l) Whether Defendant's unlawful, unfair, and/or deceptive practices harmed Plaintiff and Class Members; and

(m) The method of calculation and extent of damages for Plaintiff and Class Members.

66. Plaintiff's claims are typical of the claims of the Class because Plaintiff was subjected to the same uniform billing practices, unauthorized debits, and misleading refund representations as other Class members.

67. Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

68. A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

69. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

70. Defendant has acted or refused to act in respects generally applicable to The Class, thereby making appropriate final and injunctive relief with regard to the members of the Class as a whole.

71. Defendant failed to comply with the authorization and notice requirements of §

907(a) of the EFTA, 15 U.S.C. § 1693e(a), and further violated the EFTA by initiating electronic fund transfers without valid authorization, including after such authorization had been revoked and/or after cancellation of the underlying service, as well as related obligations under California law, with respect to the Class members.

72. Section 907(a) of the EFTA, 15 U.S.C. §1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

73. Section 903(9) of the EFTA, 15 U.S.C. § 1693a(9), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

74. Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b), provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

75. Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.l0(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." *Id.* at ¶10(b), comment 5. The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." *Id.* at ¶10(b), comment 6.

76. Defendant debited the bank accounts of Class members through its standardized electronic fund transfer billing system without obtaining a valid written authorization signed or similarly authenticated for preauthorized electronic fund transfers, and/or after any such authorization had been revoked or was no longer valid, in violation of 15 U.S.C. § 1693e(a) and 12 C.F.R. § 1005.10(b).

77. Defendant debited Class members' bank accounts without providing a copy of the written authorization to the consumer at the time of authorization, and/or by continuing to

utilize preauthorized electronic fund transfer mechanisms after cancellation of service, also in violation of 15 U.S.C. § 1693e(a) and 12 C.F.R. § 1005.10(b).

78. The size and definition of the Class can be identified through Defendant's internal records and/or records maintained by Defendant's payment processors or agents.

## COUNT I:

## VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT

### On Behalf of Plaintiff and the Nationwide Class

79. Plaintiff reincorporates by reference all of the preceding paragraphs as though fully set forth herein.

80. Section 907(a) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693e(a), provides that a preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made.

81. Section 903(9) of the EFTA, 15 U.S.C. § 1693a(9), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

82. Regulation E, 12 C.F.R. § 1005.10(b), provides that preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization must provide a copy to the consumer.

83. The Official Staff Interpretations to Regulation E, 12 C.F.R. Part 1005, Supplement I, further clarify that the authorization process should evidence the consumer's identity and assent to the authorization. The authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable.

84. Defendant violated the EFTA by initiating electronic fund transfers from Plaintiff's and Class Members' bank accounts without first obtaining a valid written authorization signed or similarly authenticated by the consumer, and without providing a copy

of such authorization, in violation of 15 U.S.C. § 1693e(a) and 12 C.F.R. § 1005.10(b).

85. Defendant further violated the EFTA by initiating electronic fund transfers after Plaintiff and Class Members had revoked any prior authorization and/or canceled the underlying service, thereby rendering any prior authorization invalid and making such transfers "unauthorized electronic fund transfers" within the meaning of the EFTA.

86. Defendant also violated the EFTA by continuing to utilize its preauthorized electronic fund transfer billing system to debit Plaintiff's and Class Members' accounts after cancellation, including through the same payment mechanisms used for recurring charges, despite the absence of valid authorization at the time of such transfers.

87. As a result of Defendant's violations of the EFTA, Plaintiff and Class Members suffered damages, including the loss of funds, overdraft fees, and other financial harm, and are entitled to recover actual damages, statutory damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1693m.

## COUNT II:
## VIOLATION OF THE UNFAIR COMPETITION LAW
**(Cal. Bus. & Prof. Code §§ 17200 *et seq*.)**

**On Behalf of Plaintiff and the California Subclasses**

88. Plaintiff incorporates by reference each allegation set forth above.

89. Actions for relief under the Unfair Competition Law ("UCL") may be based on any business act or practice that falls within its broad definition. Violations of the UCL occur as a result of unlawful, unfair, or fraudulent business acts and practices. To establish standing, a plaintiff must show a causal connection between a defendant's business practices and the alleged harm—that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers both isolated misconduct and ongoing practices.

### UNFAIR

90. California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice." Defendant's acts, omissions, misrepresentations, and practices as

alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

91. In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

92. Here, Defendant's conduct caused substantial injury to Plaintiff and members of the California Subclasses, including unauthorized debits after cancellation, retention of funds without justification, overdraft fees, rejected payments, and disruption of consumers' financial accounts. Plaintiff also faces a real and immediate threat of future injury sufficient to support standing for injunctive relief. Defendant's billing practices are standardized, automated, and not dependent on individualized circumstances. Plaintiff cannot rely on Defendant's representations that such practices will not recur. Absent injunctive relief, Defendant's conduct is likely to continue and poses an ongoing risk of harm to Plaintiff and the public.

93. Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer. Defendant's deception led Plaintiff and members of the California Subclass to believe that billing would cease upon cancellation of service and return of equipment, and that refunds would be promptly issued. In reality, Defendant continued to debit consumers' bank accounts without authorization, failed to honor promised refunds, and unfairly profited from retaining funds to which it had no lawful entitlement.

94. Finally, the injury suffered by Plaintiff and members of the California Subclass is not an injury that these consumers could reasonably have avoided. After Defendant falsely represented that billing would cease upon cancellation and that refunds had been or would be processed, these consumers suffered injury in fact due to Defendant's unauthorized debits and

failure to return funds. Defendant failed to take reasonable steps to ensure that charges were stopped after cancellation, and failed to provide Plaintiff and California Subclass Members with timely and accurate information regarding their refunds. As such, Defendant took advantage of its superior position and control over consumers' bank accounts to deceive Plaintiff and the California Subclass into believing their accounts were settled, while continuing to withdraw or retain funds. Therefore, the injury suffered by Plaintiff and members of the California Subclass is not an injury which these consumers could reasonably have avoided.

95. Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

**FRAUDULENT**

96. California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

97. The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

98. Here, not only were Plaintiff and the California Subclass members likely to be deceived, but these consumers were actually deceived by Defendant. Such deception is evidenced by the fact that Plaintiff and California Subclass Members relied on Defendant's assurances that billing would cease upon cancellation and that refunds would be promptly processed. In reality, Defendant continued to debit consumer accounts after cancellation and failed to issue refunds as represented. Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

99. As explained above, Defendant deceived Plaintiff and other California Subclass Members by issuing "Refund Receipts" and written assurances that billing would cease upon

cancellation, while in reality continuing to debit accounts and retain funds.

100. Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

**UNLAWFUL**

101. California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

102. Defendant's conduct constitutes unlawful business practices because it violates multiple predicate statutes and legal duties, including: (a) the Electronic Fund Transfer Act, 15 U.S.C. § 1693e(a), and Regulation E, 12 C.F.R. § 1005.10, by initiating electronic fund transfers without valid written authorization and/or after such authorization was revoked; (b) making misleading representations regarding post-cancellation billing and refunds in violation of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), (7), (9), (14), and (16); (c) California common law prohibiting conversion, by wrongfully exercising dominion over Plaintiff's and Class Members' funds; and (d) California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code § 17600 *et seq*., by failing to present automatic renewal terms clearly and conspicuously, failing to obtain affirmative consent, failing to provide a compliant acknowledgment, and charging consumers after cancellation without a lawful basis.

103. Although the ARL does not provide an independent private right of action, violations of the ARL are actionable under the UCL as unlawful business practices. Defendant's conduct, including post-cancellation billing and failure to provide required disclosures and acknowledgments, therefore independently supports liability under the unlawful prong.

104. Defendant also used deceptive statements and omissions regarding cancellation, billing cessation, and refunds to induce Plaintiff and California Subclass Members to provide or leave bank-account access in place and/or to refrain from disputing charges, resulting in economic harm. These predicate violations of federal and state law—together with Defendant's wrongful retention of funds—constitute "unlawful" business acts or practices under Business and Professions Code Section 17200 *et seq*.

105. The foregoing predicate violations and wrongful acts are therefore "unlawful" within the meaning of the UCL.

106. Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and California Subclass Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief. Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and California Subclass Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

**COUNT III:**

**VIOLATION OF CONSUMER LEGAL REMEDIES ACT**

**(Cal. Civ. Code § 1750 *et seq*.)**

**On Behalf of Plaintiff and the California Misrepresentation Subclass**

107. Plaintiff incorporates by reference each allegation set forth above herein.

108. Defendant's actions as detailed above constitute violations of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770, including but not limited to:

a. Representing that its services and billing practices had characteristics, uses, or benefits that they did not have, such as representing through customer service communications and account-related emails that consumers would not be charged following cancellation and equipment return, when Defendant in fact continued to initiate charges. *Cal. Civ. Code* § 1770(5);

b. Representing that its billing and cancellation practices were of a particular standard or quality, namely that billing would cease upon cancellation and that refunds would be processed promptly, when in fact Defendant's practices allowed for post-cancellation charges and failure to issue refunds. *Cal. Civ. Code* § 1770(7);

c. Advertising goods or services with intent not to sell them as advertised, including "refund guaranteed" assurances and representations that no further billing would occur after cancellation. *Cal. Civ. Code* §1770(9);

d. Representing that a transaction conferred or involved rights, remedies, or obligations which it did not have or involve, such as the right to cancel service without incurring further charges and the right to receive a refund once a refund was confirmed, when Defendant in fact continued to debit accounts and retain funds. *Cal. Civ. Code* §1770(14); and

e. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it had not, including representing that a refund had been issued and that Plaintiff's account had been handled in

accordance with Defendant's prior representations, specifically through the November 16, 2024 "Refund Receipt," when no refund had actually been processed or transmitted. *Cal. Civ. Code* §1770(16).

109. These misrepresentations are pled with particularity as described herein. Specifically: (a) on or about October 2024, a Defendant customer service representative informed Plaintiff during a telephone call that he would not be charged in connection with the return of equipment; (b) on November 15, 2024, Defendant transmitted an email confirming cancellation and representing that Plaintiff's account would be closed upon return of equipment; and (c) on November 16, 2024, Defendant transmitted a "Refund Receipt" stating that funds had been returned. Each of these representations was false or misleading when made, as Defendant subsequently initiated electronic debits and failed to process any refund. These communications were made by Defendant through its agents and automated account systems, directed to Plaintiff, and were intended to induce reliance regarding billing status and refunds.

110. As previously discussed, Plaintiff reasonably relied on Defendant's representations by refraining from immediately escalating disputes, allowing Defendant continued access to his account, and attempting to resolve the issue through Defendant's customer service channels rather than immediately pursuing external remedies.

111. On June 11, 2025, pursuant to Cal. Civ. Code § 1782(a), Plaintiff, through counsel, served Defendant with a written CLRA notice and demand letter ("CLRA Notice"), attached hereto as **Exhibit A**. The CLRA Notice described in reasonable detail the specific unlawful practices challenged in this action, including unauthorized debits after cancellation, false refund acknowledgments, failure to timely process refunds, and misrepresentations regarding cancellation and billing, and demanded that Defendant correct, repair, replace, or otherwise rectify such practices within thirty days. More than thirty days have passed since service of the CLRA Notice, and Defendant has failed to provide any correction, refund, remedy, or written assurance of compliance sufficient to address the violations identified therein.

112. Plaintiff will serve, or has contemporaneously served with the filing of this First Amended Complaint, a supplemental notice pursuant to Cal. Civ. Code § 1782 expressly identifying the class-wide nature of Defendant's conduct and providing Defendant an

opportunity to cure on behalf of all affected consumers pursuant to § 1782(c). Plaintiff will amend this Complaint to seek class-wide damages under the CLRA following the expiration of the statutory notice period if Defendant fails to cure.

113. Plaintiff presently seeks damages on an individual basis, and injunctive relief on behalf of himself and the California Misrepresentation Subclass, pursuant to Cal. Civ. Code § 1780. Plaintiff will seek leave to amend to pursue class-wide damages following full compliance with Cal. Civ. Code § 1782(c) and the expiration of the statutory cure period, if Defendant fails to cure.

## COUNT IV:

## CONVERSION

**(Common Law)**

**On Behalf of Plaintiff, the Nationwide Class, and California Subclasses**

114. Plaintiff, on behalf of himself, the Nationwide Class, and the California Subclasses, incorporates by reference each allegation set forth above.

115. Plaintiff and Class Members had an immediate right to possession of specific, identifiable funds, including discrete sums debited from their bank accounts in fixed amounts tied to particular transactions and invoices, including but not limited to the $748.25 debits described herein.

116. Defendant intentionally and knowingly exercised dominion and control over Plaintiff's and Class Members' property by initiating electronic debits without valid authorization, by continuing to debit accounts after cancellation of service and revocation of authorization, and by retaining funds to which it had no lawful claim, including after representing that such funds had been refunded.

117. Defendant's conduct constituted a wrongful exercise of dominion over specifically identifiable funds inconsistent with Plaintiff's and Class Members' rights, including where Defendant issued refund confirmations while failing to actually return the funds and instead retained possession and control over those monies.

118. As a direct and proximate result of Defendant's conversion, Plaintiff and Class

Members suffered damages, including but not limited to the loss of specific funds wrongfully debited and retained, overdraft fees, rejected payments, and time and expense incurred to recover their property.

119. Plaintiff and Class Members are therefore entitled to restitution of the wrongfully taken funds, damages in an amount to be proven at trial, and any other relief permitted by law.

## REQUEST FOR JURY TRIAL

120. Plaintiff requests a trial by jury as to all claims so triable.

## PRAYER FOR RELIEF

121. Plaintiff, on behalf of himself and the Nationwide Class and the California Subclasses, respectfully request that judgment be entered against Defendant, as follows:

(a) That this action be certified as a class action on behalf of the Class and Subclass, and that Plaintiff be appointed as Class Representative;

(b) Actual damages on behalf of Plaintiff individually under the Consumer Legal Remedies Act, Cal. Civ. Code § 1780, and on behalf of Plaintiff and the Nationwide Class under the Electronic Funds Transfer Act, 15 U.S.C. § 1693m, in amounts to be proven at trial;

(c) Restitution and disgorgement on behalf of Plaintiff and the Classes of all monies improperly obtained or retained by Defendant, including through unlawful, unfair, and fraudulent business practices;

(d) Statutory damages as authorized by the Electronic Fund Transfer Act, 15 U.S.C. § 1693m;

(e) Punitive and exemplary damages as allowed by law, including under California common law, in an amount to be determined by the Court or jury;

(f) Public injunctive relief on behalf of Plaintiff and the California Subclasses under the UCL and CLRA, including injunctive relief designed to protect the public from Defendant's ongoing unlawful practices, and not solely to redress past harm;

(g) Reasonable attorneys' fees and costs pursuant to the CLRA, EFTA, Cal. Code Civ. Proc. § 1021.5, or as otherwise provided by statute, common law, or the Court's inherent authority;

(h) Such other and further relief, both general and specific, legal and equitable, as this Court deems just and proper.

Dated: April 29, 2026

Respectfully submitted,

**LAW OFFICES OF TODD M. FRIEDMAN , P.C.**

By: /s/Todd M. Friedman, Esq.
TODD M. FRIEDMAN, ESQ.
Attorney for Plaintiff

# EXHIBIT A

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
ATTORNEYS FOR CONSUMERS
21031 VENTURA BLVD., SUITE 340
WOODLAND HILLS, CA 91364
323-306-4234 TOLL FREE
866-633-0228 FACSIMILE
CALIFORNIA OFFICE
WWW.TODDFLAW.COM

E-MAIL: TFRIEDMAN@TODDFLAW.COM

WRITER LICENSED IN:
CALIFORNIA
ILLINOIS
PENNSYLVANIA

June 11, 2025

**Via Certified U.S. Mail & Electronic Mail**

Race Communications, Inc.
ATTN: Legal Request
1325 Howard Ave. #604
Burlingame, CA 94010
legal.request@race.com

**RE: Jeremiah Maniquiz -Confidential Settlement Communication Pursuant to FRE 408 and CEC 1152**

To Whom It May Concern:

Please be advised that our office represents Mr. Jeremiah Maniquiz ("Plaintiff") in pursuing legal claims against Race Communications, Inc. ("Defendant") for violations of the Consumer Legal Remedies Act ("CLRA") and California Business and Professions Code §17200 ("BPC").

Having been formally notified of our representation, we respectfully demand you not contact our client for any reason. Instead, please direct all future contact and correspondence to this office. We reserve the right to seek injunctive relief against you should you fail to honor these directives.

The purpose of this letter is to advise your company of its violations and to quickly resolve the matter of my client's right to compensation for the same, without resorting to expensive and unnecessary litigation. Before additional damages accrue, including needless attorney fees, we should work together expeditiously to correct the inequity that occurred in connection with your company's handling of the matters detailed below. Thus, please accept this correspondence as notice pursuant to the CLRA, of Defendant's violations thereof. Be advised, you have thirty (30) calendar days from the date of receipt of this notice, to correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of § 1770 of the CLRA, as further outlined below.

Please review the violations set forth below and contact our offices immediately, to discuss settlement.

**<u>Facts</u>**

Defendant served as Plaintiff's household internet service provider for approximately eighteen months. Plaintiff canceled the service due to persistent issues with unreliable connectivity and consistently poor customer service.

On or around, October 15, 2024, Defendant discontinued internet service to Plaintiff's residence.

On or around November 15, 2024, Plaintiff contacted Defendant by telephone to request a return shipping label for the company's equipment. During the call, Plaintiff also advised the Defendant's representative that the equipment would be shipped back that same day.

Plaintiff explained that the delay in returning the equipment was due to a 28-day military deployment. The representative assured Plaintiff that the timing would not be an issue and that no charges would be incurred. Defendant has acknowledged receipt of the returned equipment via email.

Despite this representation, on or around November 16, 2024, Defendant withdrew $748.25 from Plaintiff's bank account, which is solely used to pay household bills. This unauthorized withdrawal resulted in the account becoming overdrawn. Plaintiff contacted Defendant immediately, and the company apologized for the error and stated that the funds would be refunded.

However, on or around November 17, 2024, Defendant again withdrew $748.25 from the same account, once again causing an overdraft and interfering with Plaintiff's automatic bill payments. Plaintiff attempted to reach Defendant but was unable to speak with on its representatives due to the company's limited weekend hours.

As of the date of this notice, Defendant has not refunded the improper withdrawals. As a result, and to this day, Mr. Maniquiz continues to suffer from Defendant's unethical business practices. Had Plaintiff known of Race Communication's dishonest business ethics he would never have done business with Defendant.

**<u>CLRA (*Cal. Civ. Code* §17500 et seq.) Violations</u>**

Among other things, the CLRA prohibits the following "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction to result or which results in the sale or lease of goods or services" to a consumer:

1. Advertising goods or services with intent not to sell them as advertised- *Cal. Civ. Code* §1770(9);

2. Passing off goods or services as those of another *Cal. Civ. Code* §1770(1)

3. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. *Cal. Civ. Code* §1770(7)

4. Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; - *Cal. Civ. Code* §1770(14);

5. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not. *Cal. Civ. Code* §1770(16)

Further, under the CLRA, a consumer may recover actual damages, an order enjoining any such practices that are prohibited by the CLRA, restitution of property, punitive damages and reasonably attorney's fees and costs. *Cal. Civ. Code* §1788 (a) and (d).

By engaging in the conduct detailed above, Defendant violated Sections §1770(1), (7), (9), (14), and (16) of the CLRA, thereby entitling Plaintiff to attorney's fees and costs, and actual and punitive damages.

**Demand**

Ultimately, I am sure your company can appreciate the need to address this issue with my client and the need to avoid unnecessary litigation. My client, too, appreciates the hardships of protracted litigation. Therefore, we are willing today to settle this matter outside litigation, if you contact our office immediately upon receipt of this letter.

If you chose to ignore this letter seeking settlement, then we will have no choice but to pursue my client's CLRA claims in a court of law. Please be advised that if such circumstances should arise, my demand shall be deemed withdrawn upon the filing of our complaint. Again, we hope that this can be avoided.

Best regards,

Todd M. Friedman, Esq.
Attorney at Law